[No. 15430-7-II.  Division Two.  February 11, 1993.]

*In the Matter of the Detention of* ROBBIE PUGH, *Appellant,*
LOLITA VELMER, ET AL, *Respondents.*

688

*Stanford F. Opdyke* of *Department of Assigned Counsel,* for appellant.

*Christine O. Gregoire, Attorney General,* and *Christopher P. Jennings, Assistant,* for respondents.

PETRICH, J. — Robbie Pugh challenges his detention under the involuntary commitment statutes, contending that the State is using the commitment process as additional punishment for two statutory rape convictions for which he served a prison term. He asserts that his commitment is inharmonious with legislative intent and that his prior convictions provide insufficient evidence of a recent overt act to support a finding that he presents a likelihood of serious harm to others as required under RCW 71.05.320(2)(b). We affirm.

In 1986, Pugh pleaded guilty to two counts of first degree statutory rape involving 8- and 9-year-old children. The court sentenced him to concurrent 61-month terms. Just before Pugh's release from prison, the staff at the sexual offenders center where Pugh was held expressed concern that Pugh might reoffend upon release. As a result, Preston Hess, a county-designated mental health professional, interviewed Pugh. Pugh told Hess that he was likely to reoffend and needed treatment. Hess then detained Pugh on the basis that Pugh presented a danger to others.

The State detained Pugh for an additional 14 days following a hearing on November 28, 1989. In December, the State filed a petition for 90 days of involuntary treatment. Pugh apparently stipulated to treatment, but the stipulation pro-

vided that the State could not use the court's findings as evidence in future petitions. In April 1990, the State petitioned for 180 days involuntary treatment. Pugh again stipulated to treatment with a similar agreement about the inadmissibility of the stipulation in future proceedings. In October 1990, the State again filed a petition for 180 days' involuntary treatment, which is the subject of this appeal.

Dr. Mark Soelling, a clinical psychologist at Western State Hospital, and Dr. Lolita Velmer, a staff psychiatrist, stated in their joint affidavit in support of the petition that Pugh continued to acknowledge sexual attraction to children and continued to manifest a lack of insight and judgment about reoffending. The affidavit listed Pugh's diagnosis as: "Pedophilia, same and opposite sex, nonexclusive type. Intermittent Explosive Disorder. Mixed Personality Disorder (Antisocial & Borderline traits)."

At the hearing before a commissioner, Hess, Soelling, Gary Shepard (a forensic therapist responsible for Pugh's treatment), and Mark Allen (a forensic therapist who previously treated Pugh before Shepard) all testified. The commissioner found that Pugh had not cooperated with the available treatment programs and that Pugh was unable to make a choice to control his pedophilia or his impulse and personality disorders. The commissioner also found that Pugh's social and clinical history showed, as a result of mental disorders, a substantial likelihood that Pugh will act out in the future against children, causing them serious physical harm because of his sexual obsessions. The petition was granted and review was denied by a superior court judge. After oral argument before this court, but before we issued this opinion, Pugh was discharged. He then moved to dismiss his appeal as moot. The motion is denied.

██ ██ This court may decide a case that is technically moot if it involves matters of continuing and substantial public interest. We consider "(1) the public or private nature of the question presented; (2) the desirability of an authoritative determination which will provide future guidance to public officers; and (3) the likelihood that the question will

recur." *Dunner v. McLaughlin*, 100 Wn.2d 832, 838, 676 P.2d 444 (1984). " '[T]he need to clarify the statutory scheme governing civil commitment is a matter of continuing and substantial public interest.' " *In re LaBelle*, 107 Wn.2d 196, 200, 728 P.2d 138 (1986) (quoting *McLaughlin*, 100 Wn.2d at 838)). Because this case involves the interplay between two civil involuntary commitment statutory schemes, one of recent enactment, and because it involves the clarification of prior case law related to all civil commitments under RCW 71.05, we view it as a matter of substantial public interest that presents an opportunity to guide state officers concerning questions that are likely to recur.

■■ The initial question Pugh presents is one of statutory interpretation. Our duty is to give effect to the intent of the Legislature. *Grant v. Spellman*, 99 Wn.2d 815, 818, 664 P.2d 1227 (1983). If a statute is plain and clear, we will not read into it things that are not there. *In re Taylor*, 105 Wn.2d 67, 69, 711 P.2d 345 (1985). We harmonize statutes involving the same subject matter. *Snohomish Cy. PUD 1 v. Broadview Television Co.*, 91 Wn.2d 3, 8, 586 P.2d 851 (1978). We interpret words to best achieve the statutory purpose. *PUD 1 v. WPPSS*, 104 Wn.2d 353, 369, 705 P.2d 1195, 713 P.2d 1109 (1985). The remaining question presented is whether the unchallenged findings, which are verities on appeal, support the trial court's conclusions of law. *See In re Labelle*, 107 Wn.2d at 209.

I

RCW 71.05 AND RCW 71.09

Pugh first contends that the commissioner erred in committing him under RCW 71.05 in light of the express legislative intent of RCW 71.09. Pugh was involuntarily committed for 180 days under RCW 71.05.320(2)(b), which provides that a person may be committed for an additional 180 days of treatment if he:

> (b) Was taken into custody as a result of conduct in which he attempted or inflicted serious physical harm upon the person of another, and continues to present, as a result of mental disorder or developmental disability a likelihood of serious harm to others; . . .[.]

Pugh contends that his involuntary commitment should have been determined under the standards of RCW 71.09, which specifically applies to sexually violent predators. Laws of 1990, ch. 3, § 1001 *et seq*. RCW 71.09.010 sets forth the Legislature's findings, one of which is important in the present case: "The legislature finds that a small but extremely dangerous group of sexually violent predators exist *who do not have a mental disease or defect* that renders them appropriate for the existing involuntary treatment act, chapter 71.05 RCW, which is intended to be a short-term civil commitment system . . .". (Italics ours.) The Legislature added that the civil commitment procedure under RCW 71.05 is inadequate to deal with sexually violent predators because they "generally have antisocial personality features which are unamenable to existing mental illness treatment modalities and those features render them likely to engage in sexually violent behavior."

A "sexually violent predator" under RCW 71.09 is "any person who has been convicted of or charged with a crime of sexual violence and who suffers from a *mental abnormality or personality disorder* which makes the person likely to engage in predatory acts of sexual violence." (Italics ours.) RCW 71.09.020(1). A "mental abnormality" is "a congenital or acquired condition affecting the emotional or volitional capacity which predisposes the person to the commission of criminal sexual acts in a degree constituting such person a menace to the health and safety of others." RCW 71.09-.020(2). A "personality disorder" is not defined.

In contrast, RCW 71.05 requires that a person suffer from a "mental disorder", which is "any organic, mental, or emotional impairment which has substantial adverse effects on an individual's cognitive or volitional functions". RCW 71.05.020(2).

Pugh contends that because he needs long-term treatment for his condition, commitment under RCW 71.05 is inappropriate because one of the intended purposes of RCW 71.05 was "[t]o provide prompt evaluation and short term

treatment of persons with serious mental disorders". RCW 71.05.010(2). He also relies on statements of Preston Hess, Pugh's mental health professional, that Pugh does not have a "major mental disorder of a functional nature . . . that would traditionally fit clearly within the defense of danger to self, dangerousness to others mental disorder within [RCW] 71.05." The commissioner found that Pugh "is in need of long term treatment, and that short term treatment is unlikely to resolve the problems that led to his incarceration . . .". On the basis of this finding and in light of RCW 71.05.010(2), Pugh contends that his commitment should have been under RCW 71.09.

Preliminarily, we address Pugh's concerns about the statutory scheme. First, his commitment is consistent with legislative intent, as one of the statutory purposes of RCW 71.05 is to protect the public safety. RCW 71.05.010(7). Second, Pugh misconstrues RCW 71.05. Under that chapter there will inevitably be persons whose mental illness requires long-term treatment and those persons are protected by the systematic and continual evaluation procedure of time-limited commitments that must be renewed every 180 days. *Dunner v. McLaughlin*, 100 Wn.2d at 851-52.

The unchallenged findings describe Pugh as having "mental disorders", defined as pedophilia and impulse disorders, and describe Pugh as suffering from a personality disorder. RCW 71.09 applies to sexually violent predators "who do not have a mental disease or defect that renders them appropriate for the existing involuntary treatment act, chapter 71.05". RCW 71.09.010. Thus, the commissioner did not err in committing Pugh under RCW 71.05, as he suffers from mental disorders.

The Legislature did not intend for RCW 71.09 to preempt RCW 71.05. Rather, the purpose of RCW 71.09 is to augment those situations where RCW 71.05 would be an inadequate commitment procedure. This is further evidenced by RCW 71.09.010, which is a statement of the Legislature's frustration with the limitations of RCW 71.05.

## II
## LIKELIHOOD OF SERIOUS HARM TO OTHERS
## AND RECENT OVERT ACTS

As noted above, the commissioner's findings of fact support the conclusion of law that Pugh suffers from a mental disorder. However, Pugh contends that the findings of fact do not support the conclusion of law that he posed a substantial likelihood of committing physical harm upon release. He points to the absence of a finding of any recent overt act evidencing such behavior.

In *In re Harris*, 98 Wn.2d 276, 284, 654 P.2d 109 (1982), the Supreme Court adopted a common law test for determining whether a defendant continues to present a "likelihood of serious harm to others". The court said, "We thus interpret RCW 71.05.020 as requiring a showing of a substantial risk of physical harm as evidenced by a recent overt act. This act may be one which has caused harm or creates a reasonable apprehension of dangerousness." *Harris*, at 284-85. Pugh contends that the only overt acts specified in the court's findings of fact are his 1986 statutory rape convictions. He contends that the failure to specify a more recent overt act makes the findings insufficient to support the court's ultimate conclusion and decision.

■ The State, conceding that the statutory scheme as interpreted by the Supreme Court in *Harris* requires a showing of a substantial risk of physical harm as evidenced by a recent overt act, points out that there is little or no guidance about what specifically constitutes an overt act or how recent it must be in order to be relevant. The State urges this court to follow the position of the Nebraska Supreme Court and other jurisdictions, which use a total facts and circumstances test.

The Nebraska court held that proof of acts committed more than 5 years prior did not contravene the defendant's constitutional due process rights because there was sufficient evidence that such acts were still probative of the subject's present state of dangerousness. *In re Blythman*, 208 Neb. 51, 302 N.W.2d 666 (1981). The court relied on

evidence similar to that in the present case: two experts testified to the defendant's dangerousness; one diagnosing the defendant as suffering from pedophilia. The experts based their opinions on both present and past examinations of the defendant. The court also noted that there was an absence of rebuttal testimony by the defendant and a lack of evidence that the defendant had learned to cope with his impulsiveness or had been cured of his pedophilia. We find this approach persuasive. *See also In re Hofmaster*, 434 N.W.2d 279 (Minn. Ct. App. 1989) (court considered 11-year-old stabbing incident with other evidence of dangerousness); *In re Mohr*, 383 N.W.2d 539 (Iowa 1986) (court considered 13-year-old assault with recent statements).

While it is clear that the due process clause does not mandate the requirement of a recent overt act to establish dangerousness,[1] we are obliged to follow our Supreme Court's interpretation of RCW 71.05.020 in *Harris*, requiring a showing of a substantial risk of physical harm *as evidenced by a recent overt act. State v. Gore*, 101 Wn.2d 481, 487, 681 P.2d 227, 39 A.L.R.4th 975 (1984). However, in considering whether an overt act, evidencing dangerousness, satisfies the recentness requirement, it is appropriate to consider the time span in the context of all the surrounding relevant circumstances. Here, the record shows that Pugh was unable to make a choice to control his pedophilia; and that there is a substantial likelihood that in the future he would act out against children, causing serious physical harm because of

---

[1]Many states require a recent overt act, yet hold that the due process clause does not mandate a recent overt act requirement. *See Project Release v. Prevost*, 722 F.2d 960, 973-74 (2d Cir. 1983) (collecting cases); *People v. Stevens*, 761 P.2d 768, 773-74 (Colo. 1988) (collecting cases).

For example, in *United States v. Sahhar*, 917 F.2d 1197, 1207 (9th Cir. 1990), *cert. denied*, 499 U.S. 963, 113 L. Ed. 2d 655, 111 S. Ct. 1591 (1991), the court said that a finding of "substantial risk of bodily injury or serious property damage" may be based on *any* activity that displays a genuine possibility of future harm to persons or property. "Whether that activity occurred recently is but one factor for the district court to consider in weighing the evidence." *Sahhar*, at 1207. The court went on to say that it did not believe that due process requires a finding that a defendant recently committed a dangerous act. *Sahhar*, at 1208.

his sexual obsessions. The absence of overt acts in the last 5 years might be sufficient to discount the diagnosis and prediction of dangerousness were Pugh then living in the typical community. Pugh, however, has been institutionalized since 1986; isolated from children toward whom he has a predilection to cause harm. The absence of more recent overt acts during confinement is readily explainable as a lack of opportunity to offend rather than a demonstration of improvement so as to negate the showing that he presents a substantial risk of physical harm. We are satisfied that his earlier offenses resulting in convictions when considered with his confinement and current diagnosis satisfy the requirement that his future dangerousness be evidenced by a recent overt act.

In the present case, we have expert opinions, admissions of the defendant that he is concerned about his own behavior, evidence of a lack of cooperation with the mental health staff, and little if any improvement in his condition. The unchallenged findings are replete with circumstances that meet the "recent overt act" requirement. Specifically, Pugh stated that he was unable to exercise volitional control to the point of being 99 percent sure that he would reoffend, he continues to express these concerns, he continues to show impaired volitional control, and he has continuing problems with anger, agitation and antisocial behavior. The earlier offense, together with these findings, shows a pattern of recent behavior adequate to satisfy the statutory requirements. The commissioner properly concluded that Pugh poses "a substantial likelihood of future harm to others."

Judgment affirmed.

SEINFELD, A.C.J., and MORGAN, J., concur.

Reconsideration denied May 24, 1993.

Review denied at 122 Wn.2d 1018 (1993).