[Nos. 27801-1-I; 28890-3-I. Division One. June 1, 1993.]

RECOVERY NORTHWEST, *Respondent,* v. RICHARD
THORSLUND, *Appellant.*

RECOVERY NORTHWEST, *Respondent,* v. HOLLY
MALONEY, *Appellant.*

*Robert Goldsmith,* for appellants.

*John Peterson,* for respondent.

*Christine O. Gregoire, Attorney General,* and *Sarah J. Coats,
Assistant,* amicus curiae.

WEBSTER, C.J. — Richard Thorslund and Holly Maloney
appeal their involuntary commitment for alcohol rehabilita-
tion under RCW 70.96A.140. They claim the statute is un-

constitutional since it violates their federal due process rights. We agree and reverse.

## FACTS

### I. Thorslund

On December 13, 1990, Recovery Northwest filed a petition for the involuntary commitment of Thorslund under RCW 70.96A.140(1) alleging he was "incapacitated by alcohol" and "threatened, attempted, or inflicted physical harm on another and is likely to inflict physical harm on another unless committed."

On December 17, 1990, a hearing was held. Recovery Northwest's first witness was Thorslund's sister. She testified that in March of 1990, Thorslund, after physically assaulting their father, was placed on probation. Due to Thorslund's failure to comply with the alcohol/mental health evaluation conditions of the probation, a warrant had been issued. She further testified that on December 4, 1990, Thorslund came to her house in an agitated state, "verbally assaulted" her and "threatened to physically assault" her. She further testified that "within 15 minutes" of Thorslund's being at her home, he was arrested on the outstanding warrant. Recovery Northwest next called Thorslund's father who testified that in March of 1990, Thorslund hit him on the shoulder but could not say Thorslund had been drinking at the time, only that he was "functioning under a real bad hangover". Thorslund was ultimately involuntarily committed to treatment for 60 days.

### II. Maloney

On July 12, 1991, Recovery Northwest filed a petition for the involuntary treatment of Maloney under RCW 70.96A-.140 alleging Maloney was "incapacitated by alcohol". On July 16, 1991, a hearing was held. The designated alcohol dependency specialist for the County testified that in her opinion Maloney was an alcoholic who was incapacitated. She stated Maloney was neglecting food, not paying her bills, making incoherent phone calls and, while in the hospital, reporting thoughts of suicide. However, the specialist

stated that she knew of no occasion when Maloney had ever tried to hurt herself.

Maloney's apartment manager testified regarding Maloney's fights with her husband, her hostility and anger while intoxicated, her failure to eat and daily intoxication, and that she seemed to be getting worse. A psychiatrist and licensed physician, who first saw Maloney as a patient in the hospital emergency room, testified that Maloney complained of losing control, being anxious, depressed, unable to sleep and afraid to be alone. The doctor asserted Maloney was an incapacitated alcoholic whose alcohol usage increased the risk that she would impulsively act on her suicide thoughts, making her a danger to herself.

The court ultimately ordered an involuntary 60-day commitment for inpatient treatment at Recovery Northwest.

## DISCUSSION[1]

In *In re Harris*, 98 Wn.2d 276, 279, 654 P.2d 109 (1982), our Supreme Court examined RCW 71.05.150 and the procedure for detaining "mentally disordered" persons for evaluation and treatment to determine whether the statute was constitutional under the federal due process clause.[2] That statute provides that a "mentally disordered" person may be summoned to appear at an evaluation and treatment facility for a 72-hour period if they "[present] a *likelihood of serious harm* to others or [themselves]". (Italics ours.) RCW 71.05-

---

[1]We note at the outset that since the detentions which are the subject of this appeal have already ended, we cannot provide the basic relief which appellants originally sought. However, even though this case is technically moot, we nevertheless proceed on the merits since the issues presented are of continuing and substantial public interest. *Dunner v. McLaughlin*, 100 Wn.2d 832, 838, 676 P.2d 444 (1984) ("the need to clarify the statutory scheme governing civil commitment is a matter of continuing and substantial public interest"); *In re Swanson*, 115 Wn.2d 21, 24-25, 804 P.2d 1 (1990).

[2]We also find that the same liberty interest is curtailed regardless of whether the involuntary commitment is for a mental or an alcohol disorder. Either constitutes a massive curtailment of liberty and requires basic due process guaranties. Furthermore, the reasoning of an involuntary commitment (*i.e.*, the State cannot intervene on its own and does so only on behalf of the public's safety) is the same whether for mental patients or alcoholics.

.150(1)(a). RCW 71.05.020(3) defines a "[l]ikelihood of serious harm" as a *"substantial risk that physical harm* will be inflicted by an individual upon his or her own person . . . [or] upon another" as evidenced by recent suicide attempts, behavior which has caused physical harm, or behavior which has placed another person in fear of such harm. (Italics ours.) The court, after stating that "RCW 71.05.020 . . . requir[es] a showing of a substantial risk of physical harm *as evidenced by a recent overt act*", concluded by finding that "[s]o construed, . . . the standard of dangerousness contained in RCW 71.05.150 *provides a constitutional basis for detention".* (Italics ours.) *Harris,* at 284-85.[3]

■ RCW 70.96A.140(1) states:

When a designated chemical dependency specialist receives information alleging that a person is *incapacitated as a result of alcoholism* . . . the designated chemical dependency specialist, after investigation and evaluation of the specific facts alleged and of the reliability and credibility of the information, may file a petition for commitment . . .. If placement in an alcohol treatment program is . . . deemed appropriate, the petition shall allege that: The person is *an alcoholic who is incapacitated by alcohol* . . ..

(Italics ours.) Although the phrase "incapacitated as a result of *alcoholism"* is not defined in the definitions section of RCW 70.96A, the phrase "Incapacitated by *alcohol"* is defined as:

a person, as a result of the use of alcohol . . ., has his or her judgment so impaired that he or she is incapable of realizing and making a rational decision with respect to his or her need for treatment *and constitutes a danger* to himself or herself, to any other person, or to property.

(Italics ours.) RCW 70.96A.020(13). In *Harris,* the court read the "recent overt act" requirement into RCW 71.05.020(3) (defining a "likelihood of serious harm"), so as to enable RCW 71.05.150(1)(a) to withstand a constitutional due process challenge. Unlike RCW 71.05.020(3) which defines the phrase "likelihood of serious harm" in terms of a "substantial risk" of "physical harm", the language in RCW 70.96A.020(13) is not

---

[3]The Department of Social and Health Services misconstrues Thorslund's and Maloney's argument as one based on procedural due process grounds.

as strong (*i.e.*, "constitutes a danger" as opposed to a "substantial risk" of "physical harm"), and RCW 71.05 fails to further define the phrase. Without further guidance from the Legislature as to what "constitutes a danger", we are unable to read the "recent overt act" requirement into the statute so as to enable it to withstand constitutional scrutiny.

The judgments are reversed.

PEKELIS and FORREST, JJ., concur.

Reconsideration denied July 15, 1993.

Review denied at 123 Wn.2d 1022 (1994).