[No. 16440-0-II.    Division Two.    July 5, 1995.]

*In re the Treatment of L.G.*

RANDY HURST, *Respondent*, v. L.G., *Appellant*, and
DEPARTMENT OF SOCIAL AND HEALTH SERVICES,
*Intervenor.*

*John A. Hays, Court Appointed Counsel*, for appellant.
*Randy Hurst*, pro se.
*Linda A. Sullivan, Assistant Attorney General, DSHS*, Amicus State Counsel.

ALEXANDER, J.* — L.G. appeals an order of the Cowlitz County Superior Court denying his motion to dismiss the State's petition to commit him for involuntary treatment of alcoholism. L.G. contends that RCW 70.96A.140, the statute under which the proceeding against L.G. was initiated, is of no force or effect because it purports to authorize nonattorneys to file such petitions and, thus, unconstitutionally usurps the judiciary's authority to regulate the practice of law. We affirm the trial court's denial of L.G.'s motion.

When the petition in this case was filed, L.G. already had an extensive history of treatment at St. John's Medical Center in Longview for a variety of mental health problems and alcohol-related maladies. On April 17, 1992, L.G. left the psychiatric unit at St. John's without permis-

---

*Judge Gerry L. Alexander was a member of the Court of Appeals, Division Two, at the time oral argument was heard on this matter. He is now serving as a judge pro tempore of the court pursuant to CAR 21(c).

sion. Two hours later, L.G. was returned to the medical center's emergency department for treatment of injuries he suffered when he "walk[ed] into a truck". At that time he had a potentially lethal blood alcohol concentration of 0.50 percent.

Two days later, while L.G. was still receiving care at the medical center's emergency department, a county-designated mental health professional (CDMHP) petitioned Cowlitz County Superior Court for an order to commit L.G., pursuant to the provisions of RCW 71.05, for a 72-hour involuntary mental health evaluation and treatment. The Superior Court granted the petition and ordered L.G. to be re-admitted to St. John's psychiatric unit.

While under this order, L.G. expressed a desire to leave the hospital. As this was against medical advice and the prior court order, a CDMHP was asked to conduct an evaluation of L.G. The CDMHP concluded that L.G. suffered from "organic [b]rain syndrome, [secon]dary to long-term [alcohol] abuse & encephalitis . . . [that] has severely compromised his cognitive & volitional control". Clerk's Papers, at 47. The Superior Court subsequently ordered L.G. detained for a 14-day mental health evaluation and treatment at St. John's Hospital.

During the 14-day mental health detention, Randy Hurst, a county-designated chemical dependency specialist (CDCDS) for Cowlitz County, prepared, signed, and filed a petition with the Cowlitz County Superior Court for an order committing L.G. for a 60-day treatment under RCW 70.96A, the statute governing involuntary commitment for alcoholism. The petition bore the caption: "IN RE: THE TREATMENT OF [L.G.,] Respondent, RANDY HURST, Cowlitz Designated Chemical Dependency Specialist, Petitioner". Clerk's Papers, at 63. Hurst was not an attorney.

A hearing on the petition was held before a Cowlitz County Superior Court judge on April 27, 1992 at St. John's Medical Center. At the hearing, L.G., through his court-appointed counsel, moved to strike the pleadings and dismiss the petition. He asserted that despite a statu-

tory provision specifically authorizing a CDCDS to sign alcohol commitment petitions, the petition did not comply with CR 11 because it was not signed by an attorney or a party appearing pro se.[1]

The trial court denied L.G.'s motion and entered an order committing L.G. to an alcoholism treatment facility for a term not to exceed 60 days. This appeal followed.

# I

■ We must first address the issue of mootness. Clearly, this case is moot because L.G. is no longer being detained under the order at issue and thus this court cannot provide effective relief. *In re Cross,* 99 Wn.2d 373, 377, 662 P.2d 828 (1983). Although a court will not ordinarily consider a moot case, it may decide such a case to provide "an authoritative determination which will provide future guidance to public officers" when it involves a matter of "continuing and substantial public interest" that is likely to recur. *Cross,* 99 Wn.2d at 377 (quoting *Sorenson v. Bellingham,* 80 Wn.2d 547, 558, 496 P.2d 512 (1972)). Because the issue presented by this case is important and likely to recur, we will address it.

# II

■ The only substantive issue before this court is whether RCW 70.96A.140, which establishes the process for petitioning for an order of commitment for alcoholism, is unconstitutional to the extent that it permits a nonattorney to sign such a petition.[2] The relevant constitutional

---

[1]CR 11 states, in part:

"Every pleading, motion, and legal memorandum of a party represented by an attorney shall be dated and signed by at least one attorney of record in the attorney's individual name . . . . A party who is not represented by an attorney shall sign and date the party's pleading, motion, or legal memorandum . . . .".

[2]In addition, L.G. invites this court to consider whether the State Constitution bars a nonattorney from: (1) appearing at a commitment hearing; (2) presenting evidence; (3) examining witnesses; and (4) responding to legal argu-

provision is article IV, section 1 of the Washington State Constitution, which provides that "[t]he judicial power of the state shall be vested in a supreme court". These powers include the formulation of rules governing admission to practice law. *Seattle v. Ratliff*, 100 Wn.2d 212, 667 P.2d 630 (1983).

■ L.G. contends that RCW 70.76A.140(1), insofar as it purports to allow nonattorneys to sign petitions for commitment, invades the exclusive purview of the judicial branch to regulate the practice of law. The statute in question reads, in relevant part, as follows:

> When a designated chemical dependency specialist receives information alleging that a person is incapacitated as a result of [alcoholism] . . . the designated chemical dependency specialist, after investigation and evaluation of the specific facts alleged and of the reliability and credibility of the information, may file a petition for commitment of such person with the superior court . . . .

RCW 70.96A.140(1).[3] In support of his contention that this statute is unconstitutional, L.G. relies on *Bennion, Van-Camp, Hagan & Ruhl v. Kassler Escrow, Inc.*, 96 Wn.2d 443, 453, 635 P.2d 730 (1981) for the proposition that the Legislature violates the separation of powers doctrine whenever it presumes to authorize, by statute, nonattorneys to practice law. L.G.'s interpretation of *Hagan* fails to recognize that the court's inherent power includes both the power to enjoin the practice of law, notwithstanding purported legislative authorization, *See Washington State Bar Ass'n v. Washington Ass'n of Realtors*, 41 Wn.2d 697,

ments. He also seeks review of whether the statute violates due process protections of the Fourteenth Amendment to the United States Constitution. *See Recovery Northwest v. Thorslund*, 70 Wn. App. 146, 851 P.2d 1259 (1993), *review denied*, 123 Wn.2d 1022 (1994). With respect to the first issue, because L.G. failed to object to or assign error to any ruling of the trial court involving these matters, we decline to consider them now. *See Allied Daily Newspapers v. Eikenberry*, 121 Wn.2d 205, 214, 848 P.2d 1258 (1993). The due process issue does not warrant our review because it was addressed and rendered moot when the Legislature amended the statute on which L.G.'s challenge is based. *See* Laws of 1994, ch. 231, § 1, p. 1281.

[3]This section was amended in 1993 to change the word "alcoholism" to the words "chemical dependency". Laws of 1993, ch. 362, § 1.

699, 251 P.2d 619 (1952), as well as the power to allow it, irrespective of what statutory language might suggest. *Cultum v. Heritage House Realtors, Inc.*, 103 Wn.2d 623, 630-31, 694 P.2d 630 (1985).

This court, in *In re Welfare of M.T.*, 69 Wn. App. 380, 848 P.2d 1302, *review denied*, 122 Wn.2d 1003 (1993), rejected a challenge to a dependency petition based on grounds similar to those presented here. In *Welfare of M.T.*, this court assumed, "[w]ithout so holding, . . . that signing a dependency petition constitutes the practice of law", and acknowledged that "the power 'to regulate the practice of law lies within the sole jurisdiction of the courts.' " *Welfare of M.T.*, 69 Wn. App. at 383 (quoting *Cultum*, 103 Wn.2d at 630). We went on to say, however, that the nonattorney nonetheless had authority to sign the petition because the Supreme Court had not acted to override the statute authorizing nonattorneys to sign the dependency petition and has also adopted court rules governing juvenile proceedings that specifically provide that "[a]ny person may file a petition alleging dependency". JuCr 3.2(a). *Welfare of M.T.*, 69 Wn. App. at 383-84. In addition, because the person who signed and filed the petition was a named party, the requirements of CR 11 were met. *Welfare of M.T.*, 69 Wn. App. at 384.

In our judgment, the rationale and holding in *Welfare of M.T.* applies in this case. This is so despite the fact that in *Welfare of M.T.* there existed both a statute and a court rule specifically authorizing the submission of the relevant petition by "any person". We acknowledge that no court rules have been adopted with respect to alcohol commitment proceedings.[4] The Supreme Court is not required, however, to adopt such rules.[5] The absence of a court rule permitting a nonattorney to file a petition

---

[4]*See* RCW 71.05.570 (mental health commitment statute, which provides that the Supreme Court "shall adopt such rules as it shall deem necessary with respect to the court procedures and proceedings provided for by this chapter").

[5]*See* Introduction to Superior Court Mental Proceedings Rules (MPR) ("While the Legislature may recommend rulemaking as to particular matters, it may not mandate rulemaking which is an inherent power of the judicial branch".).

alleging chemical dependency does not alter the court's inherent power to allow it. *See Cultum*, 103 Wn.2d at 630-31.

In *Cultum*, the Supreme Court discussed several "sound and practical reasons why some activities which fall within the broad definition of 'the practice of law' should not be unauthorized simply because they are done by laypersons." *Cultum*, 103 Wn.2d at 627. There, the court balanced these "practical reasons" against the State's interest in protecting the public against "incompetence, divided loyalties, and other evils," which the Court recognized as being the focus of the rule against unauthorized practice of law. It concluded that "the supposed benefits to the public from the lawyer's monopoly on performing [certain] legal services no longer justifie[d] limiting the public's freedom of choice." *Cultum*, 103 Wn.2d at 628.

▌ In this case, many of the practical benefits and few, if any, of the supposed evils discussed in *Cultum* are present. The commitment statute at issue allows only county-designated chemical dependency specialists to sign the petition. RCW 70.76A.140(1). These specialists have training and expertise that make them uniquely qualified to investigate and report to the trial court on matters directly at issue in the petition hearing. Consequently, there is little chance that the public will be harmed by the activities of these specialists acting on behalf of the state. Furthermore, the statute does not increase the possibility that persons allegedly incapacitated by alcohol will be harmed by incompetent representation, divided loyalties, or any other evil contemplated in *Cultum*, because the specialist represents the interest of the state, not the interest of the persons allegedly incapacitated by alcohol. If those persons desire representation, the statute does not interfere with their ability to retain legal counsel, nor does it alter the requirement that their counsel be admitted to the bar. We cannot conclude, therefore, that the judiciary's constitutional role in regulating the practice of law was violated by the Legislature's limited authorization of a CDCDS to sign a petition for an order of commitment, as provided by RCW 70.76A.140(1).

In our view, the challenged provision does not render the statute unconstitutional. Consequently, Hurst had the statutory authority to sign the petition. The trial court did not err in denying L.G.'s motion.

Affirmed.

HOUGHTON, A.C.J., and MORGAN, J., concur.