[No. 50222-1-I. Division One. May 12, 2003.]

*In the Matter of the Treatment of* JOHN MAYS.

*Richard S. Lichtenstadter*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Gerald A. Smith, Deputy*, for respondent.

COLEMAN, J. — John Mays was involuntarily committed for 60 days of alcoholism treatment under RCW 70-.96A.140(1) because he had been admitted to a detoxification facility at least twice in the preceding 12 months and was found to be "in need of a more sustained treatment program." On appeal, Mays contends that the statutory provision under which he was involuntarily committed is unconstitutionally vague and overbroad. We agree and reverse the trial court's order of commitment.

## FACTS AND PROCEDURAL HISTORY

John Mays is a chronic alcoholic. He also has a medical history of chronic seizure disorder and hypertension for which he is prescribed medication. When he drinks, he sometimes loses track of time and forgets to take his medication. At least twice in early 2002, he received treatment at Harborview Medical Center for minor cuts and bruises from falls he sustained when under the influence of alcohol. Around the same time, Mays met with a county designated chemical dependency specialist and told him

that he visited sobering services almost daily and had been admitted to the King County Detoxification Facility three times during the last three months.

On February 25, 2002, the State filed a petition for 60 days of involuntary chemical dependency treatment against Mays under RCW 70.96A.140(1).[1] The petition alleged that Mays was either gravely disabled or had twice previously been admitted for detoxification during the past 12 months and was in need of a more sustained treatment program.

After a two-day hearing, on March 5, 2002, the trial court found that the State had not proven by clear, cogent, and convincing evidence that Mays was gravely disabled, as defined by RCW 70.96A.020(12).[2] But it ordered Mays to be committed to 60 days of inpatient alcoholism treatment on the basis that at least twice in the previous 12 months he had been admitted for detoxification and he was "in need of a more sustained treatment program." RCW 70.96A.140(1). In response to Mays' constitutional challenge to the statutory grounds under which he was committed, the trial court construed "in need of a more sustained treatment program" to include a requirement that the State show that Mays' alcoholism presented a danger to his physical health and safety.

---

[1] RCW 70.96A.140(1) provides statutory grounds for 60 days of involuntary commitment of a chemically dependent or alcoholic person who:

1) Presents a likelihood of serious harm;

2) Is gravely disabled;

3) Has twice before in the preceding 12 months been admitted for detoxification, sobering services or chemical dependency treatment pursuant to RCW 70.96A.120 and is in need of a more sustained treatment program; or

4) Has threatened, or attempted or inflicted serious harm on another and is likely to inflict serious harm on another unless committed.

[2] RCW 70.96A.020(12) defines "gravely disabled" as a person who:

(a) Is in danger of serious physical harm resulting from a failure to provide for his or her essential human needs of health or safety; or (b) manifests severe deterioration in routine functioning evidenced by a repeated and escalating loss of cognition or volitional control over his or her actions and is not receiving care as essential for his or her health or safety.

## DISCUSSION

Mays asks this court to determine whether the grounds for civil commitment of alcoholics under RCW 70-.96A.140(1) based upon two prior admissions for detoxification and a need for a more sustained treatment program provide a constitutional basis for detention. *In re Det. of LaBelle*, 107 Wn.2d 196, 201, 728 P.2d 138 (1986). He also claims that these grounds are void for vagueness.

We note initially that Mays' 60-day involuntary commitment for treatment of alcoholism has already ended, rendering the case moot. Nevertheless, we review the merits of Mays' claims because the issues presented are matters of continuing and substantial public interest. *See Dunner v. McLaughlin*, 100 Wn.2d 832, 838, 676 P.2d 444 (1984).

The first question we address is what standard of review applies. The State argues that different due process standards apply to chemical dependency commitment hearings than to mental illness hearings due to the State's power to regulate alcohol and the nature of alcoholism. But this court has previously found that there is no distinction between the liberty interests at stake in both types of hearings. *See Recovery N.W. v. Thorslund*, 70 Wn. App. 146, 148 n.2, 851 P.2d 1259 (1993) ("We also find that the same liberty interest is curtailed regardless of whether the involuntary commitment is for a mental or an alcohol disorder."). And the United States Supreme Court has stated that "civil commitment *for any purpose* constitutes a significant deprivation of liberty that requires due process protection." *Addington v. Texas*, 441 U.S. 418, 425, 99 S. Ct. 1804, 60 L. Ed. 2d 323 (1979) (emphasis added). Thus, we reject the State's claims that the due process standards for civil commitments for treatment of alcoholism differ from those for civil commitments for treatment of mental illness.

We also reject the State's claim that the criminal due process test for vagueness does not apply to civil commitments. "A statute is void for vagueness if it is

framed in terms so vague that persons 'of common intelligence must necessarily guess at its meaning and differ as to its application.' " *Haley v. Med. Disciplinary Bd.*, 117 Wn.2d 720, 739, 818 P.2d 1062 (1991) (quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391, 46 S. Ct. 126, 70 L. Ed. 322 (1926)). This vagueness test is identical to that used in a criminal case relied upon by the *Haley* court, *City of Seattle v. Eze*, 111 Wn.2d 22, 26, 759 P.2d 366 (1988). Thus, there is no distinction between the vagueness tests applicable to civil and criminal proceedings.[3]

 A statute is presumed constitutional; one who challenges it must demonstrate its invalidity beyond a reasonable doubt. *City of Bellevue v. State*, 92 Wn.2d 717, 719-20, 600 P.2d 1268 (1979). "[I]f the statute is reasonably capable of a constitutional construction it will be given that construction." *State v. Oyen*, 78 Wn.2d 909, 913, 480 P.2d 766 (1971), *vacated on other grounds*, 408 U.S. 933, 92 S. Ct. 2846, 33 L. Ed. 2d 745 (1972). This court's primary objective is to ascertain and give effect to the intent of the legislature. *LaBelle*, 107 Wn.2d at 205. But where "a significant deprivation of liberty is involved, statutes must be construed strictly." *LaBelle*, 107 Wn.2d at 205.

In 1975, the United States Supreme Court held that the indefinite, involuntary confinement of a man who was shown under a Florida statute to be mentally ill and in need of treatment was an unconstitutional deprivation of liberty in violation of the due process clause. *O'Connor v. Donaldson*, 422 U.S. 563, 95 S. Ct. 2486, 45 L. Ed. 2d 396 (1975). The Court stated, "a State cannot constitutionally confine without more a nondangerous individual who is capable of surviving safely in freedom by himself or with the help of willing and responsible family members or friends." *O'Connor*, 422 U.S. at 576.

---

[3] Only in the context of balancing procedural due process protections have courts applied lesser standards to civil commitments. *Addington*, 441 U.S. at 430 (holding that criminal burden of proof of "beyond a reasonable doubt" does not apply in civil commitment proceedings).

■ While it is clear that a nondangerous person who suffers from a mental disorder cannot be involuntarily confined, the United States Supreme Court has not addressed the degree of dangerousness that must be proved to justify detention. The Washington Supreme Court provides some guidance in this respect. In *In re Harris*, 98 Wn.2d 276, 654 P.2d 109 (1982), our Supreme Court reviewed the constitutionality of the involuntary commitment statute for mental illness based upon a likelihood of serious harm. Relying upon *Humphrey v. Cady*, 405 U.S. 504, 509, 92 S. Ct. 1048, 31 L. Ed. 2d 394 (1972), which stated that due process requires a showing that the potential for doing harm is "great enough to justify such a massive curtailment of liberty," the *Harris* court determined that the risk of danger to self or others must be substantial and the harm must be serious before detention is justified. *Harris*, 98 Wn.2d at 283-84. But it rejected the argument that the harm must be construed to be imminent, recognizing that a person already hospitalized is not likely in imminent danger but that danger may result upon release. *Harris*, 98 Wn.2d at 283-84. It further noted that other statutory provisions for emergency commitment expressly contained the "imminent harm" requirement, and that the legislature's omission of "imminent" must have been intentional. *Harris*, 98 Wn.2d at 283-84. *Harris* also held that in the context of commitment due to a "likelihood of serious harm" as defined in former RCW 71.05.020(3) (1979), there must be a showing of a recent overt act. *Harris*, 98 Wn.2d at 282.

The standard of dangerousness for civil commitments was further examined in *LaBelle* when an alternate statutory provision for civil commitment—grave disability—was challenged. Again relying upon *Humphrey*, our Supreme Court held that to withstand constitutional scrutiny, the State's burden of proving the risk of danger of serious harm under the "gravely disabled" standard as defined in former RCW 71.05.020(1)(a) was no less than under the "danger to self or others" standard construed in *Harris*. *LaBelle*, 107 Wn.2d at 203-04. The court held, "we construe the gravely

disabled standard of RCW 71.05.020(1)(a) to require a showing of a substantial risk of danger of serious physical harm resulting from failure to provide for essential health and safety needs." *LaBelle*, 107 Wn.2d at 204. But *LaBelle* declined to impose a "recent overt act" requirement in light of the fact that a gravely disabled individual usually presents a danger due to neglect of essential human needs rather than a recent overt act.[4] *LaBelle*, 107 Wn.2d at 204. *LaBelle* also rejected a reading of the "gravely disabled" standard that would permit involuntary commitment of persons solely because they were suffering from mental illness and would benefit from treatment.[5] *LaBelle*, 107 Wn.2d at 207.

The principles of *LaBelle* and *Harris* were most recently applied by this court in *Recovery Northwest*, which addressed the constitutionality of a now-repealed provision for involuntary commitment for alcoholism treatment upon a showing that the respondent was "incapacitated by alcohol." *Recovery N.W.*, 70 Wn. App. at 147. Explaining that the liberty interests involved in mental illness and alcoholism civil commitments were identical, the court applied the same due process standards to alcohol-related commitments under chapter 70.96A RCW as were applied in *Harris* under chapter 71.05 RCW, the statutory scheme for mental illness civil commitments. *Recovery N.W.*, 70 Wn. App. at 148 n.2 & 149. Based upon the dangerousness standard set forth in *Harris*, this court concluded that the term "incapacitated by alcohol" did not provide a constitutional basis for detention, even when more specifically defined in RCW 70.96A.020(13) as a person who " 'has his or

---

[4] The requirement of a recent overt act was also questioned in *In re Detention of Pugh*, 68 Wn. App. 687, 694-96, 845 P.2d 1034 (1993), where a sex offender in civil commitment proceedings had not committed an "overt act" during the five years he was incarcerated, but was deemed likely to reoffend. Noting that the due process clause does not mandate the showing of a recent overt act, this court construed "recent overt act" broadly to allow consideration of historical overt acts when determining dangerousness.

[5] We also note that *O'Connor* established that it is insufficient to detain an alcoholic or a mentally ill person merely on the basis that the State wishes to benevolently provide treatment. *O'Connor*, 422 U.S. at 574.

her judgment so impaired that he or she is incapable of realizing and making a rational decision with respect to his or her need for treatment *and constitutes a danger* to himself or herself, to any other person, or to property.' " *Recovery N.W.*, 70 Wn. App. at 149 (quoting former RCW 70.96A.020(13) (1991)). We stated, "Unlike [former] RCW 71.05.020(3) (1989) which defines the phrase 'likelihood of serious harm' in terms of a 'substantial risk' of 'physical harm', the language in [former] RCW 70.96A.020(13) is not as strong (i.e., 'constitutes a danger' as opposed to a 'substantial risk' of 'physical harm') . . . ." *Recovery N.W.*, 70 Wn. App. at 149-50. Without a requirement to show more than just "a danger," the statute was held unconstitutional. *Recovery N.W.*, 70 Wn. App. at 150.

Under RCW 70.96A.140(1), a person who is chemically dependent may be committed to a treatment facility for up to 60 days if that person "has twice before in the preceding twelve months been admitted for detoxification, sobering services, or chemical dependency treatment pursuant to RCW 70.96A.110 or 70.96A.120, and is in need of a more sustained treatment program." No further definition of these quoted terms is provided. Other statutory grounds for alcoholism commitment, which are identical to those for mental illness, include: "presents a likelihood of serious harm," "is gravely disabled," and "has threatened, attempted, or inflicted physical harm on another and is likely to inflict physical harm on another unless committed." RCW 70.96A.140(1).

The State urges this court to construe "is in need of a more sustained treatment program" to include a standard of dangerousness that comports with the standard stated in *O'Connor*. But *O'Connor* did not establish a minimum threshold of dangerousness, so the State's proposed construction is unclear. And, as Mays correctly explains, the minimum threshold established in *Harris* and reaffirmed in *LaBelle* and *Recovery Northwest* requires more than just danger. These cases support Mays' argument that involuntary commitment is justified only upon a showing that the

risk of danger in the near future is substantial and the potential physical injury is serious. In contrast, taking the State's assertion that the chronic abuse of alcohol "is commonly known to endanger one's health" to its logical conclusion, all chronic alcoholics could be detained solely by virtue of their condition and previous attempts to detoxify.

To accept the State's argument that an unwritten and seemingly unintended dangerousness standard based upon *O'Connor* should be injected into the term "is in need of more sustained treatment" would be a strained reading of the statute and contrary to *Recovery Northwest*, which declined to construe the word "danger" to meet the substantial dangerousness threshold established in *Harris*. Furthermore, in *O'Connor*, the Court determined that it was not necessary to set a minimum threshold of dangerousness to decide the case, reserving the issue for future litigation. *O'Connor*, 422 U.S. at 573-74. Accordingly, it does not make sense to accept the State's suggested interpretation; doing so would provide little guidance to public officers trying to determine whether a certain degree of dangerousness met due process requirements.

Mays also contends that the legislature's decision to define the other grounds for involuntary commitment under RCW 70.96A.140(1) (e.g., likelihood of serious harm, gravely disabled, or has threatened, attempted, or inflicted physical harm) in terms of dangerousness and physical harm indicates that the omission of these terms from the alternative grounds at issue here was intentional. *See, e.g., Harris*, 98 Wn.2d at 284 (finding that omission of word "imminent" from statute for mental illness civil commitments was both practical and consistent with its inclusion in other statutory provision for emergency commitment). The legislature apparently intended to create a mechanism for treating chronic alcoholics who had previously had unsuccessful detoxification efforts, but who did not exhibit the level of dangerousness required for other detainees. The question here, however, is whether that mechanism is sufficiently protective of substantive due process rights. We conclude that it is not.

The evidence in this case indicated that Mays' alcoholism had some detrimental effects on his health and safety due to his falls and failure to take medication regularly, but there was no showing of substantial recent harm or substantial risk of harm in the near future. The physician who twice examined Mays at Harborview testified that she could not say whether Mays was likely to suffer a serious injury or illness in the near future. The trial court expressly found that he was not "gravely disabled." On its face and as applied to these facts, RCW 70.96A.140(1) is not narrowly drawn to ensure that only alcoholics with a substantial risk of serious injury in the near future are detained. It is, therefore, unconstitutionally overbroad.

We next address whether the challenged provisions are void for vagueness. "The issue of vagueness involves the procedural due process requirements of fair notice of the conduct warranting detention and clear standards to prevent arbitrary enforcement by those charged with administering the applicable statutes." *LaBelle*, 107 Wn.2d at 201. The United States Supreme Court has stated that an unconstitutionally vague ordinance is one that " 'fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute,' " and "encourages arbitrary and erratic arrests and convictions." *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, 92 S. Ct. 839, 31 L. Ed. 2d 110 (1972) (quoting *United States v. Harriss*, 347 U.S. 612, 617, 74 S. Ct. 808, 98 L. Ed. 989 (1954)). It applies to both criminal actions and civil actions where a loss of constitutional rights is at issue. *Boutilier v. Immigration & Naturalization Serv.*, 387 U.S. 118, 123, 87 S. Ct. 1563, 18 L. Ed. 2d 661 (1967). If the First Amendment is not involved, a vagueness challenge is evaluated by examining the statute as applied under the particular facts of the case. *State v. Coria*, 120 Wn.2d 156, 163, 839 P.2d 890 (1992).

Mays relies upon several cases from other jurisdictions finding that civil commitment statutes based upon a showing that treatment and care are needed and/or essential are

unconstitutionally vague. *See, e.g., Kendall v. True*, 391 F. Supp. 413 (W.D. Ky. 1975); *Commonwealth ex rel. Finken v. Roop*, 234 Pa. Super. 155, 339 A.2d 764 (1975); *Bell v. Wayne County Gen. Hosp. at Eloise*, 384 F. Supp. 1085 (E.D. Mich. 1974). These courts all criticized the lack of statutory guidance for determining whether treatment or care is "necessary" or "essential," which in some cases resulted in unlawful detentions of persons for whom treatment was merely "beneficial."

■ Mays argues that the phrase "in need of a more sustained treatment program" provides no more guidance than the unconstitutionally vague terms "necessary" and "essential." Without legal, medical, or statutory definition, Mays contends that it is impossible to avoid widely differing opinions as to when or why "a more sustained treatment program" is needed. We agree. On its face, RCW 70-.96A.140(1) is unconstitutionally vague.

The State contends, however, that the trial court's specific findings of potential danger based upon Mays' medical conditions and repeated falls provided sufficient specificity to the phrase "in need of a more sustained treatment program" by showing a potential danger of physical harm. To support this argument, the State cites a Rhode Island federal district court decision upholding the statutory phrase, "incapacitated by alcohol" with no dangerousness criteria by construing it to apply

> to situations where a putative detainee has posed a relatively immediate threat to himself or to others, that is, that the statute implicitly requires, as a condition precedent to emergency commitment, that the subject's potential for harming himself or others be critical enough to justify the "massive curtailment of liberty," *Humphrey*, 405 U.S. at 509, which such confinement entails.

*Donahue v. R.I. Dep't of Mental Health*, 632 F. Supp. 1456, 1480 (D.R.I. 1986).

Despite its reliance upon a construed dangerousness standard, the State's own briefing reveals the arbitrariness

of applying such a standard. On the one hand, the State asserts that entering a detoxification facility for a third time indicates a need for treatment because the first two were ineffective. In the subsequent paragraph, the State reinterprets its standard to include a showing that treatment is needed to prevent the danger of physical harm that alcohol abuse is commonly known to cause. Even this "danger of physical harm" construction falls short, however, when compared with the degree of specific and immediate harm identified in *Donahue*. Construing "in need of a more sustained treatment program" to include "for the purpose of preventing the danger of physical harm" does not cure the constitutional defect because the degree of danger is not defined. This construction provides no information as to how much danger is sufficient to warrant involuntary commitment. Thus, as applied to the facts of this case, even a standard construed to include a dangerousness requirement is so broad that without more specificity, reasonably intelligent persons must guess as to its meaning. We therefore conclude that the challenged grounds of RCW 70.96A.140(1) are void for vagueness.

We vacate the order of commitment and dismiss the petition.

BAKER and ELLINGTON, JJ., concur.